**CANDIS MITCHELL**
California State Bar No. 242797
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Candis_Mitchell@fd.org

Attorneys for Ms. Priscilla Hernandez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE IRMA E. GONZALEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 08CR371-IEG |
| Plaintiff, ) | DATE: MAY 29, 2008 |
| ) | TIME: 2:00 P.M. |
| v. ) | |
| **PRISCILLA HERNANDEZ** ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF |
| ) | DEFENDANT'S MOTIONS *IN LIMINE* AND |
| Defendant. ) | OTHER TRIAL MOTIONS. |

**I.**

**INTRODUCTION**[1]

On January 30, 2008, Ms. Hernandez entered the United States from Mexico at the Calexico West Port of Entry. Ms. Hernandez was driving a 1998 Kia Sophia. A search of the Kia resulted in the discovery of approximately 28.26 kg kilograms of marijuana concealed in the spare tire, both rear doors and bumpers of the vehicle. Ms. Hernandez denied knowledge of the marijuana.

**1. Primary**

At approximately 3:45 p.m., Ms. Hernandez arrived at the primary lane in an attempt to gain entry to the United States driving a 1998 Kia Sophia. As the driver and only occupant of the car, she was

---

1 This statement of facts is based on the discovery provided by the government. Ms. Hernandez does not admit their accuracy and reserves the right to challenge them at a later time.

questioned by Officer Hunt upon application into the United States. Officer Hunt asked her if she was the registered owner of the Kia, and Ms. Hernandez informed Officer Hunt that she was in the process of completing the purchase through a friend. Officer Hunt requested that Ms. Hernandez provide her with the registration, he reported that her hand "trembled" when she tried to open the glove compartment. After asking that she open the truck, Officer Hunt then referred Ms. Hernandez to secondary for further inspection.

**2.     Secondary**

Officer Mendibles was assigned the secondary inspection of the Kia. After calling Officer Anazaldo to do a screening on the car with a narcotics detector dog, he discovered packages in both bumpers, both rear doors, and the spare tire. Officer Mendibles probed the packages and field tested the substance found within. The results of the field test was positive for marijuana, and Office Mendibles removed eighteen packages totaling 28.26 kg from the Kia.

**3.     Interrogation and Statements**

Ms. Hernandez was placed under arrest at approximately 4:20 p.m. and was advised of her Miranda rights eight-hours later by ICE Agent Russell Vensk at 12:10 a.m. on January 31, 2008. Ms. Hernandez agreed to waive her rights and answered Agent Vensk's questions. Among the statements made by Ms. Hernandez was that she was the owner of the car and that she had purchased it approximately one month ago making a $500 down payment. Ms. Hernandez indicated that she still owed $700 towards the purchase price of the vehicle. Ms. Hernandez denied knowledge of the marijuana in the vehicle.

On February 13, 2008, Ms. Hernandez was indicted for intentional importation of 28.26 kg of marijuana in violation of 21 U.S.C. § 952 and 960, and for possession with the intent to distribute in violation of 21 U.S.C. § 841(a)(1).

These motions follow.

///
///
///
///
///
///

## II.

## THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B) AND 609 BECAUSE THE GOVERNMENT HAS PROVIDED NO NOTICE DESPITE REPEATED DEFENSE REQUESTS

Federal Rules of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Under Rule 609, evidence of prior convictions are usually admissible only under certain circumstances and in the discretion of the court as well. Here, Ms. Hernandez timely requested notice of proposed Rule 404(b) and Rule 609 evidence in her discovery requests to the government. To date, Ms. Hernandez has not received notice of any 404(b) or 609 evidence in this case. Any unnoticed evidence should be excluded from the trial based on a notice failure.

The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; thus, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). It is not sufficient to state merely that the other act will be offered for one of the enumerated purposes. Instead, the government must state precisely how the fact of consequence may be inferred from the other acts evidence. Because the government has failed to articulate any precise 404(b) evidence it intends to introduce, nor any evidentiary hypothesis by which a fact of consequence will be shown by this evidence, any and all other acts evidence must be excluded under Rules 401 and 404(b).

Ms. Hernandez also seeks to preclude admission of any prior criminal history under rule 609 for similar reasons. She has never been convicted of any offense. As such, the admissibility of a prior offense according the to precepts delineated in Rule 609 are inapplicable to her.

Finally, prior to any admission of 404(b) or 609 evidence, the court must consider whether the evidence would be more prejudicial than probative. In this case, any such evidence would be unduly prejudicial. Therefore, the Court must exclude any 404(b) or 609 evidence under Rule 403.

///

### III.

### MS. HERNANDEZ'S COUNSEL SHOULD HAVE THE OPPORTUNITY TO VOIR DIRE THE JURY

Pursuant to Fed. R. Crim. P. 24(a), to provide effective assistance of counsel and to exercise Ms. Fernandez's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

### IV.

### INTRODUCTION OF PARTICULAR EVIDENCE IS HIGHLY PREJUDICIAL WITHOUT ADDING ANY PROBATIVE VALUE TO THIS TRIAL, THUS MERITING EXCLUSION UNDER FRE 403

Federal Rule of Evidence 403 allows the Court to exclude relevant evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice."

**A.   Mug Shots**

There were "mug shot"-style pictures of Ms. Hernandez taken while she was in custody. These pictures have no place at this trial. This is not an identity case: Ms. Hernandez does not dispute that she is the individual arrested. Accordingly, these pictures have no probative value. In contrast, however, their appearance automatically puts one in mind of a criminal, and is not unlike forcing a defendant to wear jail-issued clothing while in trial. Under FRE 403, these pictures are highly prejudicial and devoid of probative value. They should be excluded from trial as a result.

**B.   Pre-Arrest Demeanor**

At trial, the government may seek to introduce evidence of Ms. Hernandez's pre-arrest silence or demeanor. Such testimony is improper. See United States v. Whitehead, 200 F.3d 634, 637-40 (9th Cir. 2000). Thus, the government should be prohibited from eliciting such testimony regarding Ms. Hernandez's pre-arrest demeanor. To the extent the government would seek to introduce evidence of Ms. Hernandez's pre-arrest demeanor as substantive evidence of guilt or in impeachment, she files this anticipatory motion. The government should be prohibited from introducing such evidence.

**1.   "Nervousness" Testimony is Largely Irrelevant and Overly Prejudicial**

First, reactions to this type of situation will vary widely based on various factors, including one's life experiences, educational level, age, gender, health, medical conditions, diet, and the circumstances

surrounding the arrest. Thus Ms. Hernandez's reaction, if any, is not probative of anything. See Fed. R. Evid. 401, 402. Laywitness testimony regarding nervousness, absent some prior knowledge of the defendant, has minimal, if any, relevance. See United States v. Pineda-Torres, 287 F.3d 860, 866 (9th Cir. 2002) (describing an immigration officer's testimony about the defendant's "apparent nervousness" only "marginally probative" on the issue of knowledge)  United States v. Wald, 216 F.3d 1222, 1227 (10th Cir.2000) (*en banc*) (evidence of nervousness "is of limited significance"[,] particularly when [the agent] had no prior acquaintance with the [defendant].")

Second, such evidence is potentially highly prejudicial, and it should not be allowed on that basis as well. See Fed. R. Evid. 403; Jenkins v. Anderson, 447 U.S. 231, 239 (1980); United States v. Hale, 422 U.S. 171, 180-81 (1975); Stewart v. United States, 366 U.S. 1, 5 (1961); Grunewald v United States, 353 U.S. 391, 424 n.5 (1957).

### 2.     "Nervousness" Testimony Violates Rules 701 & 704(b)

Such evidence should be excluded if it is couched in terms of a law enforcement witness' personal opinion about Ms. Hernandez's behavior, *i.e.,* "she was nervous." An inspector or agent's personal opinion is irrelevant and such opinion testimony based on no prior knowledge of the defendant, and upon a very limited observation opportunity, violates Fed. R. Evid. 701. Rule 701 provides that a lay witness can only testify to opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or to the determination of a fact in issue and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. In Gonzalez-Rivera v. INS, 22 F.3d 1441 (9th Cir. 1994), this Circuit held that an INS agent's testimony at a suppression hearing that an individual was nervous must be disregarded because it was not based upon "reliable, objective evidence." Id. at 1447. There, when explored, the basis for the agent's testimony was that the individual appeared to have a "dry mouth." The court stated that absent reliable, objective testimony that people who are nervous have a dry mouth, as opposed to just being thirsty, this inference was nothing more than "subjective feelings [which] do[] not provide any rational basis for separating out the illegal aliens from the American citizens and legal aliens." Id. Likewise, testimony by the primary agent that Ms. Hernandez was "nervous" is nothing more than a subjective judgment based upon no prior knowledge of her and should not be considered by the jury.

**V.**

**ALL EXPERT WITNESSES OFFERED WITHOUT APPROPRIATE NOTICE TO MS. HERNANDEZ VIOLATE FEDERAL RULES OF CRIMINAL PROCEDURE 16(A)(1)(E) AND MUST BE EXCLUDED.**

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing, continuing prior to and during trial. Fed. R. Crim. P. 16(c). When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is a proper remedy. Fed. R. Crim. P. 16(d)(2). See also Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the defense is <u>entitled</u> to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis provided.).

Early in this case Ms. Hernandez filed pretrial motions requesting notice of any expert witnesses that the government intends to call at trial, including rebuttal. Thus far, the government has given notice of only two expert witnesses they anticipate testifying -- Lori Anderson (chemical and drug analysis) and ICE Senior Special Agent Robert J. Fejeran, Jr (drug value). If the government seeks to offer any further expert testimony without 1) timely notifying Ms. Hernandez of the expert and his or her qualifications; 2) providing a summary of the expected testimony; and 3) providing a summary of the bases of the expert's opinion, this Court should exclude such witnesses from testifying at trial. Ms. Hernandez respectfully requests that this Court grant a motion *in limine* accordingly, to give effect to the discovery requirements of Rule 16, and to afford the accused the opportunity to prepare her defense in this case.

**VI.**

**THE COURT SHOULD EXCLUDE TESTIMONY REGARDING THE VALUE OF THE NARCOTICS**

Ms. Hernandez objects to any expert testimony about the value of the narcotics seized in this case. This testimony is irrelevant and therefore inadmissible under Rule 402. Even if minimally probative, this evidence should be excluded under Rule 403 because it is unduly prejudicial. If the government does not

introduce value testimony, Ms. Hernandez offers to stipulate that the quantity of narcotics in this case is a distributable, not personal use, quantity. This obviates the need for value testimony, and also counsels for prohibiting the government from bringing the narcotics into the courtroom in an attempt to prejudice the jury. See Fed. R. Evid. 403; United States v. Merino-Balderrama, 146 F.3d 758, 762 (9th Cir. 1998) (In "Old Chief [the Supreme Court] held that a defendant's offer to stipulate to an element of a crime is relevant evidence that must be factored into a district court's analysis under [Federal Rule of Evidence] 403.").

One of the major reasons that the government often seeks to introduce value testimony is to demonstrate that the defendant must have known of the presence of drugs in the car. Because the drugs are valuable, the argument runs, drug smugglers would not entrust them to unknowing couriers. The Federal Rules of Evidence and controlling case law, however, specifically forbid this chain of inference in the form of expert testimony.

Rule 704 provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704.

Ninth Circuit case law holds that this rule applies any time an expert seeks to opine on a defendant's knowledge, willfulness, or other mental state. See United States v. Morales, 108 F.3d 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses"); United States v. Webb, 115 F.3d 711 (9th Cir. 1997) (holding it impermissible under Rule 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons concealed in car.). Indeed, knowledge—the primary contested issue in this trial—is a mental state. Any proposed expert who would opine (directly or indirectly) that Ms. Hernandez must have known that the vehicle she was driving contained marijuana testifies to her mental processes or condition. Whatever the form, the government may not use the trappings of "expertise" to bolster speculation regarding Ms. Hernandez's alleged knowledge. This testimony is expressly forbidden by Rule 704 and by Ninth Circuit law. Drug value testimony must not be used to circumvent these established evidentiary rules.

**A.   The Government Should Be Precluded from Eliciting "Structure Testimony" From the Value Expert.**

Typically the government proffers that its value expert will explain that drivers have the critical responsibility of passing by law enforcement officials who are trained to detect persons transporting loads of narcotics. This specific testimony must be excluded. This proposed opinion is nothing more than "structure testimony" offered through a value expert. As a result, it invites reversible error.

In United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), amended, 246 F.3d 1150 (9th Cir. 2001), the Ninth Circuit held that structure testimony is inadmissible in a non-complex, non-conspiracy drug smuggling case. As the court wrote, "[t]o admit this testimony on the issue of knowledge, the only issue in the case, was unfairly prejudicial, and an abuse of discretion under Rule 403." Id. at 1017. Testimony as to the "critical responsibility" of drivers presupposes a compartmentalized, organized drug smuggling network. It assumes that the drivers know that drugs exist in the vehicles, and couches the endeavor in terms of a "job" willingly taken on by the driver of the car. This testimony essentially seeks to assume out of existence the key issue in this trial: whether Ms. Hernandez knew that drugs were in the vehicle she was driving. Such testimony is improper and must be excluded.

**B.   The Court Should Exclude any Expert Testimony on "Retail Value" Because it is It Irrelevant and Highly Prejudicial.**

Even assuming that this testimony were otherwise admissible, Rule 403 prohibits expert testimony on the street value of marijuana at trial. According to the government's argument, this testimony is relevant because drug trafficking organizations would not entrust this "valuable commodity" to an unknowing person. Several problems exist with this argument. First, there is absolutely no evidence that any vast drug trafficking organization exists in this case: the government's argument rests on facts that are not, and will not, be in evidence. Second, this reasoning rests on rank speculation as to the mental processes of unknown persons. The government cannot simply proffer evidence on what these vague and unknown "drug traffickers" would or would not do in a given situation. There is virtually no probative value in this proposed testimony.

In contrast, this testimony will result in substantial prejudice to Ms. Hernandez. The sheer monetary value of this marijuana could inflame the passions of the jury, and distract them from Ms. Hernandez's lack

1 of knowledge -- the true issue in this case. The amount of money at stake could well suggest that a vast drug
2 empire is implicated here; indeed, this inference is a key premise in the government's relevance argument.
3 This insinuation, however, has absolutely no evidentiary support. Beyond the government's attenuated and
4 factually unsupported argument that the value of these drugs demonstrates the defendant's knowledge,
5 absolutely no probative value exists in this testimony. The prejudice, in contrast, is extreme. This testimony
6 should therefore be independently excluded under FRE 403.

7 **C.    The Court Should Preclude the Value Expert From Testifying to Irrelevant Experience Seizing Large Quantities of Narcotics**
8

9    The government's value expert lists on his qualification summary experience dealing with large-scale
10 narcotics seizures. Were this Court to allow the value expert to testify to these experiences, the jury might
11 get the wrong impression that this case, too, is linked to larger, more serious seizures. Given that the value
12 expert readily can demonstrate his qualifications without resorting to tales of dramatic drug seizures, Ms.
13 Fernandez requests that this testimony be precluded. See Fed. R. Evid. 401, 402 and 403.

14                                                **VII.**
15
16 **THIS COURT SHOULD EXCLUDE ANY EXPERT TESTIMONY DESCRIBING THE STRUCTURE OF SUPPOSED DRUG SMUGGLING ORGANIZATIONS, AS IT IS IRRELEVANT, IMPROPER UNDER FRE 702 AND 703, AND UNDULY PREJUDICIAL UNDER FRE 403.**
17

18    Under this Circuit's precedent United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), and United
19 States v. McGowan, 274 F.3d 1251 (9th Cir. 2001), structure testimony may not be permitted in this trial.
20 This sort of "expert" testimony not only fails the balancing test set forth by FRE 403, but also is literally
21 irrelevant and an abuse of discretion under FRE 401. Vallejo 237 F.3d at 1017. The same problem exists
22 with any organizational structure evidence in this case. The government has not charged Ms. Hernandez with
23 conspiracy. No evidence whatsoever suggests that a vast drug trafficking network played any role in the
24 instant offense. Any attempt to connect Ms. Hernandez to a vast drug empire that has not been alleged and
25 has not been proven violates FRE 401, 403, and Ninth Circuit case law. A motion *in limine* excluding such
26 evidence should be granted accordingly.
27 / / /
28

## VIII.

## THE PRESENCE OF MARIJUANA IN THE COURTROOM IS HIGHLY PREJUDICIAL, MINIMALLY PROBATIVE AT BEST, AND THUS PROPERLY EXCLUDED UNDER FRE 403.

At trial, the government may insist on presenting the actual bags of marijuana seized to the jury. In this particular case, in which Ms. Hernandez's knowledge of the drugs is the only contested issue, this evidence is highly inflammatory yet has virtually no probative value as to any fact in dispute. It must be excluded under FRE 403.

FRE 403 asserts that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Presentation of the marijuana seized in this case to the jury runs afoul of this evidentiary rule.

It is feared that the government may attempt to inflame the passions of the jury through gratuitous display of the marijuana seized in this case. In the past, some Assistant United States' Attorneys have taken every opportunity to handle bags of marijuana, passing them before the jury, and moving them about the courtroom. A few have gone so far as to wear blue chemical resistant gloves when handling narcotic substances, further attempting to poison the jury through dramatics. This physical evidence has no place at this trial. Because the presence of marijuana seized is undisputed in this case, there is simply no reason to bring this physical evidence into the courtroom. This lack of probative value, however, stands in contrast to the highly prejudicial nature of this contraband. Many jurors will no doubt be scandalized by the nature of the drugs involved in this case. In sum, this evidence proves no issue that is in dispute, yet threatens to badly prejudice Ms. Hernandez. For these reasons, Ms. Hernandez respectfully requests that this evidence be excluded from trial.

## IX.

## THIS COURT SHOULD ORDER PRODUCTION OF "SUPPLEMENTAL REPORTS" AND TECS

Pursuant to Rule 16 of the Federal Rules of Criminal Procedure and upon request of the defense, the government has a duty to turn over any reports in its possession that are material to the preparation of the defendant's defense. The defense has requested such reports in its motion for discovery.

**A.    Production of Supplemental Reports**

Ms. Hernandez requests disclosure of any "supplemental reports" generated in this case. It has come to Ms. Hernandez's attention that the government's recent practice is to not disclose these "supplemental reports." These reports generally memorialize later investigation of the case and can include information that confirms a defendant's statements made at the border. Additionally, pre-trial disclosure will avoid unnecessary delay at trial should the reports become producible under Jencks. See, e.g, Fed. R. Crim. P. 26.2(d). If the government contends that any "supplemental report" generated in this case is not discoverable, Ms. Hernandez requests that the Court view this report *in camera.*

**B.    Production of Any TECS or Other Computer-Generated Hits Related to Ms. Hernandez, or the Vehicle That Contained the Narcotics**

Ms. Hernandez requests the Court to order the government to produce any "TECS" or other computer-generated hits related to her the 1998 Kia Sophia that she was driving when she was arrested. It may be part of Ms. Hernandez's defense that the car she was driving on the day she was arrested had been out of her control for sometime. Ms. Hernandez is willing to give the court an *ex parte* proffer to the court in order for the court to better understand the relevance. Information that other persons had driven the car across the border or that the car was under investigation could tend to exculpate Ms. Hernandez by strengthening a theory that another person with access to either was responsible for hiding drugs there.

**X.**

**THE COURT SHOULD REQUIRE THE GOVERNMENT TO ESTABLISH CHAIN OF CUSTODY**

Ms. Hernandez fully expects the government to adhere to the evidentiary requirements established by Fed. R. Evid. 901 concerning the authentication of physical evidence. Should the government seek to admit the alleged marijuana seized in this case, establishment of a "chain of custody" is required to establish that the drug evidence presented at trial is indeed the same drug evidence that had a role in the events in issue. As the alleged marijuana seized in this case is "an object connected with the commission of a crime, the proponent must also establish the chain of custody." Gallego v. United States, 276 F.2d 914, 917 (9th

Cir.1960). Additionally, the government "must introduce sufficient proof so that a reasonable juror could find that the items in the bag are in 'substantially the same condition' as when they were seized." Id.

## XI.

## **THE COURT MUST SUPPRESS ANY STATEMENTS BY MS. HERNANDEZ**

**A.  Ms. Hernandez's Alleged Post-Miranda Statements Must Be Suppressed Because They Were Not Voluntary Because They Were Obtained Outside the Safe-Harbor Period.**

Ms. Hernandez's post-arrest statements must be suppressed because they were taken more than eight hours after her arrest without cause.

Pursuant to 18 U.S.C. § 3501(c), delay in presentment, beyond six hours, requires suppression of any incriminating statements made thereafter. Section 3501(c) provides:

> In any criminal prosecution by the United States . . . a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit person charged with offenses against the laws of the United States . . . if such confession is found by the trial judge to have been voluntarily made and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention . . .

"The clear meaning of this provision is that delay alone permits suppression when any of these requisites are not met." United States v. Perez, 733 F.2d 1026, 1031 (2d Cir. 1984). Thus, the Ninth Circuit has held that "there must be circumstances in which delay in arraignment will require suppression of a confession regardless of the voluntariness of the confession." United States v. Alvarez-Sanchez, 975 F.2d 1396, 1401 (9th Cir. 1992), overruled on other grounds, 511 U.S. 350 (1994) (holding that the exclusionary rule—due to delay in arraignment—does not apply where the person is detained solely on state charges). See also Perez, 733 F.2d at 1031 ("[§] 3501 leaves the *McNabb-Mallory* rule intact with regard to confessions obtained after a six hour delay"); United States v. Robinson, 439 F.2d 553, 563-64 (same).

Delay in interrogating a defendant "can provide the sole basis for a finding of involuntariness, if the delay exceeds six hours." United States v. Manuel, 706 F.2d 908, 913 (9th Cir. 1983). In United States v. Wilson, the Ninth Circuit stated that "the fact that unreasonable delay, alone, beyond six hours may support a finding of involuntariness suggests that unreasonable delay is the most important factor of all [in the 3501

analysis]." 838 F.2d 1081, 1085 (9th Cir. 1988). Wilson further explains "if unreasonable delay in excess of six hours can itself form the basis for a finding of involuntariness, that same delay may also suggest involuntariness of the Miranda waiver." Id. at 1086. Finally, in Alvarez-Sanchez, 975 F.2d at 1400-01, the Ninth Circuit noted that while delay prior to obtaining a confession may be a basis for finding statements to be involuntary, pre-confession delay (as opposed to pre-arraignment delay) need not be unreasonable to warrant suppression. Because any statements made by Ms. Hernandez's were obtained eight-hours after her detention, this Court should find that any Miranda waiver and subsequent statements were involuntary, and thus, inadmissible.

Because Ms. Hernandez's was not promptly arraigned before a magistrate judge or other state or local official, her statements must be suppressed.

**B.   Ms. Hernandez Requests a Hearing Pursuant to 18 U.S.C. § 3501 Concerning The Admissibility Of Any Statements That The Government Intends to Use Against Her at Trial.**

This Court should conduct an evidentiary hearing to determine whether any statements made by Ms. Hernandez's should be admitted into evidence. Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Ms. Hernandez were voluntarily made. In addition, § 3501(b) requires this Court to consider various enumerated factors, including whether Ms. Hernandez understood the nature of the charges against her and whether she understood her rights.

Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" Id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleadings.

/ / /

/ / /

**XII.**

**CONCLUSION**

For the foregoing reasons, Ms. Hernandez respectfully requests that this Court grant these motions *in limine*, as well as these other motions for trial.

Respectfully submitted,

DATED: May 15, 2008

s/ *Candis Mitchell*
**CANDIS MITCHELL**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Hernandez
candis_mitchell@fd.org