```
 1  KAREN P. HEWITT
    United States Attorney
 2  RANDY K. JONES
    Assistant U.S. Attorney
 3  California State Bar No. 141711
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California  92101-8893
 5  Telephone: (619) 557-5684; (619) 557-7381
    randy.jones2@usdoj.gov
 6
    Attorneys for Plaintiff
 7  United States of America
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0371-IEG |
|---|---|---|
| Plaintiff, | ) ) | DATE: MAY 29, 2008 |
| v. | ) ) | TIME:  2:00 p.m. |
| PRISCILLA HERNANDEZ, | ) ) ) | **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE TO:** |
| Defendant. | ) ) | |

**(1) EXCLUDE ANY 404(B) OR 609 EVIDENCE AS NO NOTICE HAS BEEN GIVEN;**
**(2) PERMIT ATTORNEY VOIR DIRE;**
**(3) EXCLUDE EVIDENCE OF "MUG SHOT" PHOTOS TAKEN AT THE BORDER AND EXCLUDE EVIDENCE OF NERVOUSNESS OF THE DEFENDANT;**
**(4) EXCLUDE EXPERT WITNESSES;**
**(5) EXCLUDE EXPERT TESTIMONY REGARDING THE STREET VALUE OF MARIJUANA**
**(6) EXCLUDE TESTIMONY RE DRUG SMUGGLING ORGANIZATIONS;**
**(7) EXCLUDE ACTUAL BAGS OF MARIJUANA FROM THE COURTROOM;**
**(8) ORDER PRODUCTION OF SUPPLEMENTAL REPORTS AND TECS**
**(9) REQUIRE GOVERNMENT TO ESTABLISH CHAIN OF CUSTODY; AND**
**(10) SUPPRESS STATEMENTS**

08cr0371-IEG

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and hereby files its response and opposition to defendant's above-referenced motions in limine. Said response is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF CASE**

On February 13, 2008, a federal grand jury in the Southern District of California, returned a two-count Indictment against Defendant Priscilla Hernandez ("Hernandez"), charging her with knowingly and intentionally importing approximately 28.26 kilograms (approximately 62.17 pounds) of marijuana, a Schedule I Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960 (Count 1); and possessing, with intent to distribute, approximately 28.26 kilograms (approximately 62.17 pounds) of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) (Count 2).

On February 14, 2008, Hernandez was arraigned on the Indictment and pled not guilty. A motion hearing is scheduled for March 24, 2008 at 2:00 p.m. before this Court.

On February 26, 2008, Hernandez filed motions to preserve evidence and compel discovery; preserve and re-weigh the narcotics evidence; and for leave to file further motions. On March 24, 2008, the Government filed its response and opposition to Hernandez' motions, along with the Government's motion for reciprocal discovery. At the motion hearing held that day, the Court continued the motions until the motions in limine date. On May 15, 2008, Hernandez filed motions in limine. The motions in limine are scheduled to be heard on May 29, 2008, at 9:00 a.m. before this Court.

This response follows.

**II.**

**STATEMENT OF FACTS**

A. PRIMARY INSPECTION

On January 30, 2008, at approximately 3:45 p.m., the driver and sole occupant of a white 1998 Kia Sephia, with no license plates, entered into the United States from Mexico through vehicle primary

lane #1 at the Calexico, California, West Port of Entry. The vehicle had a temporary State of California registration permit. Hernandez is listed as the registered owner of the vehicle.

At primary inspection, Hernandez approached Customs and Border Protection Officer (CBPO) M. Hunt and gave a negative oral customs declaration. Upon questioning by CBPO Hunt, Hernandez claimed:

> That she did not possess identification. That she was a United States citizen. That she was the registered owner of the vehicle. That she was in the process of purchasing the vehicle from a friend. That the vehicle was a "salvaged" vehicle. That the registration papers were in the glove compartment.

CBPO Hunt asked Hernandez to retrieve the papers from the glove compartment. Hernandez stated that she needed a screwdriver to pry the glove compartment open. CBPO Hunt went over to the passenger side of the vehicle and noticed glue in the airbag area of the dashboard. CBPO Hunt noticed that Hernandez' hands were trembling as she tugged and pulled on the glove compartment in an attempt to open it. CBPO Hunt asked Hernandez where she was going. Hernandez said she was going to Calexico to buy milk for her baby. CBPO noticed Hernandez making abrupt movements and requested her to open the trunk. During the inspection of the trunk, CBPO Hunt noticed Hernandez glancing at him through the side view mirror of the vehicle. CBPO Hunt referred Hernandez to the vehicle secondary lot.

B.   SECONDARY INSPECTION

At secondary, CBPO R. Mendibles asked Hernandez if she was bringing anything from Mexico and where she was going. Hernandez gave a negative customs declaration and stated she was going to shop in Calexico. Hernandez stated the car belonged to her and that it had not been registered yet. CBPO Mendibles asked Hernandez to open the trunk. After Hernandez opened the trunk, CBPO Mendibles saw a spare tire. CBPO Mendibles tried picking the tire up but it was too heavy. Mendibles requested and received the assistance from Canine Enforcement Officer (CEO) Anzaldo who used his Narcotic Detector Dog (NDD) Zorro to search the vehicle. NDD Zorro alerted to the rear bumper area of the vehicle. CEO Anzaldo advised CBPO Mendibles of the alert.

CBPO Mendibles escorted Hernandez into the vehicle secondary office for a pat down search for weapons and merchandise which was negative.

### C. DRUG SEIZURE AND HERNANDEZ' ARREST

CBPO Mendibles returned to the vehicle for further inspection. He found numerous packages concealed in the front and rear bumpers of the vehicle, and in both rear doors and the spare tire. CBPO Mendibles probed one of the packages and extracted a green leafy substance. Field-testing produced a positive indication for marijuana.

A total of 18 packages were discovered, with a combined weight of 28.26 kilograms (62.17 pounds). Some of the packages were wrapped in brown postal tape and others were wrapped in black tape. Hernandez was arrested for violation of Title 21 USC §§ 952 and 960, Importation of Controlled Substances.

The total wholesale price of the marijuana in Mexico is $12,434.00 and $24,868.00 in Calexico, California. The total retail price of the marijuana in Calexico, California is $79,577.60.

### D. HERNANDEZ' POST-ARREST STATEMENTS

On January 31, 2008, at approximately 12:12 a.m., Immigration and Customs Enforcement (ICE) Special Agent Vensk advised Hernandez of her Miranda rights, in English, as witnessed by Special Agent Morquecho. The agents used a written rights advisal form. Hernandez acknowledged her rights by reading the form and placing her initials next to each right listed on the form. Afterwards, she agreed to answer questions without an attorney being present. In a videotaped interview, Hernandez made the following statements:

> That the vehicle belonged to her. That she purchased the vehicle for $1200 about one month ago in Mexicali from a man she knows as "Borrego". That she had put $500 down payment on the car. That "Borrego" has borrowed the car from her since she purchased it, most recently on January 25, 2008 and he returned it on January 27, 2008. That she went to Mexicali about 2-3 months ago and has been living there with her father. That she works in her father's business there. That she came to the United States that day to go to the post office for a passport. That she did not have any identification and she thought her mother would be able to fax the documents she needed for her passport to the post office. She denied telling Officer Hunt she was going to Calexico to buy milk for her baby. That she has crossed the border into the United States approximately 3-4 times in that vehicle. That she denies knowing there was marijuana in the vehicle.

The interview was terminated at about 12:52 a.m.

## IV

## THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE

A.  Defendant's Motion to Exclude Any 404(b) or 609 Evidence as No Notice Has Been Given

The United States does not seek to offer any 404 (b) evidence of the Defendant in its case-in-chief.  However, even if the United States does not introduce evidence of any prior bad acts by the defendant in it's case in chief, it should be allowed the opportunity to cross-examine the defendant about any evidence that concerns her character for untruthfulness.  Rule 608(b) provides: "Specific instances of conduct by a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . ." Fed. R. Evid. 608(b).

Other than Defendant's admitted arrest for drug smuggling, the United States is unaware of any bad acts fitting the above description.

B.  Allow Attorney-Conducted Voir Dire

The United States does not object to this motion and would request equal time to question the prospective jurors.

C.  Defendant's Motion to Exclude Evidence Under Rule 403

1.  "Mug Shot" Photos Taken at the Border

If relevant, the United States may offer several photographs of "head shots" of the defendant immediately after his arrest and when she was arrested on January 30, 2008.

Specifically, these photographs depict a front and profile view of the defendant's face.  These photographs would be relevant and admissible, if the defendant contests identity, because they could be used by the jury to compare the facial similarities in evaluating whether the defendant is the same person who was arrested.  In addition, any photographs presented would not contain any markings, numbers or other notations associated with "mugshots"–but would simply show the defendant's face.

1  As such, any claim that the probative value is substantially outweighed by danger of unfair prejudice
2  is baseless.

3     2.   Exclude Evidence of Nervousness of the Defendant

4  The defendant's request to exclude evidence of nervousness should be denied. Apart from being
5  the driver and sole occupant of a vehicle containing marijuana, evidence of nervousness may also assist
6  a jury in inferring guilty knowledge. United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990).
7  See also United States v. Walitwarangkul, 808 F.2d 1352, 1354 (9th Cir. 1987) (a defendant's
8  nervousness while being questioned by Customs officials supported finding of knowing possession of
9  drugs). This rule is premised on "the thought that the driver exercises dominion and control over his
10 vehicle and its contents from which knowing possession of the contraband it contains may be inferred."
11 United States v. Haro- Portillo, 531 F.2d 962, 963 (9th Cir. 1976). See United States v. Rubio-
12 Villareal, 927 F.2d 1495, 1499 (9th Cir. 1991) ("[e]xclusive dominion over the property or vehicle in
13 which contraband is found is strong circumstantial evidence of possession"), vacated on other grounds,
14 967 F. 2d 294, 296 (9th Cir. 1992) (en banc).

15     D.   Exclude Expert Testimony Under FRCP 16(A)(1)(E)

16 The Government recognizes its obligation to provide advance notice of any evidence it will seek
17 to introduce as expert testimony under Federal Rule of Criminal Procedure 16 (A)(1)(E). At this point,
18 the Government has given notice that it seeks to introduce the drug chemist and a drug value expert as
19 expert witnesses under this rule.

20     E.   Exclude Expert Testimony Regarding the Street Value of Marijuana

21 The Government will offer expert testimony regarding the price of the drugs. It should come as
22 no surprise that the defense in this case will be that defendant did not know there was marijuana in the
23 vehicle he was driving. The value of the drugs is relevant to show that defendant knew there were drugs
24 in the vehicle. It is reasonable to deduce that one carrying an extraordinarily valuable cargo would have
25 complete knowledge of the presence of that cargo in the vehicle. United States v. Klimavicius-Viloria,
26 144 F.3d 1249 (9th Cir. 1998), United States v. Quintero-Barraza, 78 F.3d 1344 (9th Cir. 1995).

27
28

1  F.  Exclude Testimony re Drug Smuggling Organizations

2  Defendant moves this court to exclude expert testimony about drug trafficking organizations.
3  The Government does not anticipate offering evidence of drug trafficking organizations unless
4  defendant
5  puts it in issue. If defendant testifies or cross-examines a witness such that evidence of the structure of
6  the drug trafficking organization is necessary to rebut defendant's assertions, the Government reserves
7  the right to offer such testimony.

8  G.  Exclude Actual Bags of Marijuana from the Courtroom

9  The Government does not intend to bring the bulk marijuana into the courtroom. However,
10 should the Defendant decline to stipulate that the substance found in the vehicle which she was driving
11 was marijuana, a Schedule I controlled substance, the Government will bring in the samples the DEA
12 Chemist tested in order to prove that the substance was in fact marijuana, an element of the crimes
13 charged.

14 H.  Order Production of "Supplemental Reports" and TECS

15 Defendant requests "supplemental reports." The Government continues to comply with its
16 ongoing discovery obligations. The United States is not currently aware of any supplemental reports
17 in this case.

18 The Government produced to Defendant evidence from the Treasury Enforcement
19 Communications System ("TECS") regarding border crossings of the vehicle Defendant was driving.
20 The TECS evidence in this case will not be offered by the government as either Rule 404(b) evidence
21 or in the Government's case-in-chief as evidence that may be "inextricably intertwined" to the charges
22 against Defendant. However, if during Defendant's case, information from TECS becomes relevant as
23 impeachment or otherwise, the government intends to introduce the TECS evidence. The evidence
24 indicates that Defendant stated to the primary inspector that she owned the vehicle she was driving and
25 handed over a Mexican document as proof of her ownership of the vehicle. Thus, the TECS information
26 would be relevant to show the crossings of Defendant herself or of a vehicle she claims to own.

27
28

1  I.  Require Government to Establish Chain of Custody

2  The test of admissibility of physical objects connected with the commission of a crime requires a showing that the object is in substantially the same condition as when the crime was committed (or the object seized).  Factors to be considered are the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of intermeddler tampering with it.  There is, however, a presumption of regularity in the handling of exhibits by public officials.  United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981), cert. denied, 445 U.S. 856 (1982), overruled on other grounds, United States v. DeBright, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc).

If the trial judge finds that there is a reasonable possibility that the piece of evidence has not changed in a material way, he has discretion to admit the evidence.  United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981), cert. denied, 455 U.S. 956 (1982), overruled on other grounds, United States v. DeBright, 730 F.2d 1255, 1259 (9th Cir. 1984).

The Government is not required, in establishing chain of custody, to call all persons who may have come into contact with the piece of evidence.  Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960).

J.  Suppress Statements

While the Government bears the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived his Miranda rights, Hernandez need only understand that she has the right to remain silent and the right to speak to an attorney before answering any questions. Colorado v. Connelly, 479 U.S. 157, 168 (1986).  The Government need not demonstrate that a defendant understands the full consequences of her decision to waive her rights and talk to officers. Derrick v. Peterson, 924 F.2d 813, 824 (9th Cir. 1990) ("A lack of foresight has never prevented an individual from waiving his Miranda rights.").

In the instant case, the ICE Special Agents advised Hernandez of her Miranda Rights in the English language by reading, and having her read and initial a pre-printed Miranda waiver form. Hernandez admitted that she understood her rights and was willing to speak, and she signed the form.

1  Hernandez was not coerced into making the videotaped statement and the Defendant cannot show that
2  her statements were coerced. As the agents did not do anything to coerce a statement, Hernandez'
3  videotaped statement should be admitted into evidence.

## IV

## CONCLUSION

Based on the foregoing, defendant's motions should be denied.

DATED: May 22, 2008

                                                                              Respectfully Submitted,

                                                                              KAREN P. HEWITT
                                                                              United States Attorney

                                                                              s/ Randy K. Jones
                                                                              _____
                                                                              RANDY K. JONES
                                                                              Assistant United States Attorney
                                                                              Attorneys for Plaintiff
                                                                              United States of America
                                                                              Email: randy.jones2@usdoj.gov

KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5684; (619) 557-7381
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE IRMA E. GONZALEZ)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 085cr0371-IEG |
| Plaintiff, ) | |
| v. ) | CERTIFICATE OF SERVICE |
| PRISCILLA HERNANDEZ, ) | |
| Defendant. ) | |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions in Limine on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**1.    Candis Lea Mitchell, candis_mitchell@fd.org**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 22, 2008

　　　　　　　　　　　　　　　　s/ Randy K. Jones
　　　　　　　　　　　　　　　　RANDY K. JONES

08cr0371-IEG