KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-5684
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0371-IEG |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S SUPPLEMENTAL** |
| | ) | **RESPONSE AND OPPOSITION TO** |
| v. | ) | **DEFENDANT'S MOTION TO SUPPRESS** |
| | ) | **STATEMENTS, TOGETHER WITH ITS** |
| PRISCILLA HERNANDEZ, | ) | **ATTACHED MEMORANDUM OF POINTS** |
| | ) | **AND AUTHORITIES** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and hereby files its supplemental response and opposition to defendant's motion to suppress statements. Said response is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

I

STATEMENT OF CASE

A.    DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

Defendant filed motions in limine, along with her motion to suppress statements on May 15, 2008.  In her suppression motion, she argues that her post-arrest statements should be suppressed on the

08cr0371-IEG

grounds that they were involuntarily made because the agents did not interview her within six hours of her arrest, pursuant to 18 U.S.C. § 3501(c). On May 22, 2008, the Government filed a response in opposition to Defendant's motion to suppress statements but failed to respond directly to the 3501(c) claim. At the motions in limine hearing held on May 29, 2008, the Court heard testimony from Immigration and Customs Enforcement Special Agent Russell Vensk, who interviewed Hernandez. He testified[1], among other things that:

> His shift began at 12:00 midnight on January 30, 2008 to 12:00 midnight January 31, 2008. That he and his partner were duty agents for the Calexico East and Calexico West port of entries. That he and his partner had seven drug seizures that day. That he and his partner arrived at the port of entry around 4:20 p.m. That once they arrived, he met with the inspectors, looked at the vehicle, and performed other investigatory tasks prior to speaking with the defendant. That he interviewed the Defendant at 12:12 a.m.

After the hearing, the Court requested the Government to provide supplemental briefing on the 3501(c) claim raised by the Defendant.

## II

## STATEMENT OF FACTS

A.    Primary Inspection

On January 30, 2008, at approximately 3:45 p.m., the driver and sole occupant of a white 1998 Kia Sephia, with no license plates, entered into the United States from Mexico through vehicle primary lane #1 at the Calexico, California, West Port of Entry. The vehicle had a temporary State of California registration permit. Hernandez is listed as the registered owner of the vehicle.

At primary inspection, Hernandez approached Customs and Border Protection Officer (CBPO) M. Hunt and gave a negative oral customs declaration. Upon questioning by CBPO Hunt, Hernandez claimed:

> That she did not possess identification. That she was a United States citizen. That she was the registered owner of the vehicle. That she was in the process of purchasing the vehicle from a friend. That the vehicle was a "salvaged" vehicle. That the registration papers were in the glove compartment.

---

[1]    The Government is relying on memory and notes taken during the hearing. A transcript of the motion hearing was not available at the time of this writing.

1   CBPO Hunt asked Hernandez to retrieve the papers from the glove compartment.  Hernandez
2   stated that she needed a screwdriver to pry the glove compartment open.  CBPO Hunt went over to the
3   passenger side of the vehicle and noticed glue in the airbag area of the dashboard.  CBPO Hunt noticed
4   that Hernandez' hands were trembling as she tugged and pulled on the glove compartment in an attempt
5   to open it.  CBPO Hunt asked Hernandez where she was going.  Hernandez said she was going to
6   Calexico to buy milk for her baby.  CBPO noticed Hernandez making abrupt movements and requested
7   her to open the trunk.  During the inspection of the trunk, CBPO Hunt noticed Hernandez glancing at
8   him through the side view mirror of the vehicle.  CBPO Hunt referred Hernandez to the vehicle
9   secondary lot.

10      B.      Secondary Inspection

11      At secondary, CBPO R. Mendibles asked Hernandez if she was bringing anything from Mexico
12   and where she was going.  Hernandez gave a negative customs declaration and stated she was going to
13   shop in Calexico.  Hernandez stated the car belonged to her and that it had not been registered yet.
14   CBPO Mendibles asked Hernandez to open the trunk.  After Hernandez opened the trunk, CBPO
15   Mendibles saw a spare tire.  CBPO Mendibles tried picking the tire up but it was too heavy.  Mendibles
16   requested and received the assistance from Canine Enforcement Officer (CEO) Anzaldo who used his
17   Narcotic Detector Dog (NDD) Zorro to search the vehicle.  NDD Zorro alerted to the rear bumper area
18   of the vehicle.  CEO Anzaldo advised CBPO Mendibles of the alert.

19      CBPO Mendibles escorted Hernandez into the vehicle secondary office for a pat down search
20   for weapons and merchandise which was negative.

21      C.      Drug Seizure and Arrest

22      CBPO Mendibles returned to the vehicle for further inspection.  He found numerous packages
23   concealed in the front and rear bumpers of the vehicle, and in both rear doors and the spare tire.  CBPO
24   Mendibles probed one of the packages and extracted a green leafy substance.  Field-testing produced
25   a positive indication for marijuana.

26      A total of 18 packages were discovered, with a combined weight of 28.26 kilograms (62.17
27   pounds).   Some of the packages were wrapped in brown postal tape and others were wrapped in black
28

1  tape. Hernandez was arrested for violation of Title 21 USC §§ 952 and 960, Importation of Controlled

2  Substances.

3      The total wholesale price of the marijuana in Mexico is $12,434.00 and $24,868.00 in Calexico,

4  California. The total retail price of the marijuana in Calexico, California is $79,577.60.

5

6      D.    Hernandez' Post-Arrest Statements

7      On January 31, 2008, at approximately 12:12 a.m., Immigration and Customs Enforcement (ICE)

8  Special Agent Vensk advised Hernandez of her Miranda rights, in English, as witnessed by Special

9  Agent Morquecho. The agents used a written rights advisal form. Hernandez acknowledged her rights

10  by reading the form and placing her initials next to each right listed on the form. Afterwards, she agreed

11  to answer questions without an attorney being present. In a videotaped interview, Hernandez made the

12  following statements:

13          That the vehicle belonged to her. That she purchased the vehicle for $1200 about one
           month ago in Mexicali from a man she knows as "Borrego". That she had put $500
14          down payment on the car. That "Borrego" has borrowed the car from her since she
           purchased it, most recently on January 25, 2008 and he returned it on January 27, 2008.
15          That she went to Mexicali about 2-3 months ago and has been living there with her
           father. That she works in her father's business there. That she came to the United States
16          that day to go to the post office for a passport. That she did not have any identification
           and she thought her mother would be able to fax the documents she needed for her
17          passport to the post office. She denied telling Officer Hunt she was going to Calexico
           to buy milk for her baby. That she has crossed the border into the United States
18          approximately 3-4 times in that vehicle. That she denies knowing there was marijuana
           in the vehicle.
19
       The interview was terminated at about 12:52 a.m.
20
                        III
21
                POINTS AND AUTHORITIES
22
       A.    DEFENDANT'S MOTION TO SUPPRESS STATEMENTS
23
       According to 18 U.S.C. § 3501(c), there is a six-hour "safe harbor" after arrest and before
24
   arraignment during which a confession will not be excludable solely due to delay. United States v. Van
25
   Poyck, 77 F.3d 285, 288 (9th Cir. 1996). Statements made outside the safe harbor may be excluded
26
   solely for delay, but as Hernandez fails to acknowledge, a court is not obligated to do so. Id.; United
27
   States v. Shoemaker, 542 F.2d 561, 563 (10th Cir. 1976) ("non-compliance with the six hour rule does
28

                        4                            08cr0371-IEG

not ipso facto render a confession inadmissible"); 18 U.S.C. § 3501(b) (timing is just one factor that "need not be conclusive"). "We will admit a statement made outside of the safe harbor if the delay was reasonable or if public policy concerns weigh in favor of admission." United States v. Padilla-Mendoza, 157 F.3d 730, 731 (9th Cir. 1998) (citing Van Poyck, 77 F.3d at 289). Relevant policy concerns include discouraging officers from unnecessarily delaying arraignments, preventing the admission of involuntary confessions, and encouraging early processing of defendants. Id.

> 1.    Hernandez Has Not Established When Her Arrest
>        Actually Occurred

The Ninth Circuit has squarely held that a "defendant bears the burden of proving grounds for exclusion" under section 3501(c). Van Poyck, 77 F.3d at 288 (citing United States v. Halbert, 436 F.2d 1226, 1230 (9th Cir. 1970)). Though Hernandez wants this Court to immediately reach whether any delay was reasonable, the record does not show that she proved a timing violation to begin with.

The six-hour window in section 3501(c) is measured from time of arrest. United States v. Alvarez-Sanchez, 511 U.S. 350, 358 (1994). Hernandez argues her arrest occurred at 4:20 p.m., and that since she was not Mirandized until 12:12 a.m., the six-hour rule was violated. This argument is not sound. All the record shows is that she was "detained" at 4:20 p.m., i.e., taken to the secondary security office inside the port while the car was searched. In the border context, that is insufficient to show arrest. United States v. Butler, 249 F.3d 1094, 1100 (9th Cir. 2001) ("mere detention of a person in a border station's security office from which he or she is not free to leave, while a search of a vehicle occurs, is not 'custody'"). The record contains no proof of the exact time when the packages in the car were field-tested, or when Hernandez was transferred to a holding cell (custody tends to attach when suspects are taken from security office and locked in holding cells). We can only assume that after the secondary inspection officer verified that marijuana was in the packages in secondary, he notified Sector shortly thereafter. Agent Vensk then responded. We don't know when Hernandez was told drugs had been found. If just an hour or two passed between 4:20 p.m. and the time Hernandez was put in a holding cell, which is highly plausible at a busy port of entry, there is no safe harbor violation: e.g., if arrest occurred at 6:00 or 6:30 p.m., then Hernandez' statements, which were made shortly after 12:00 a.m., would have been within a six-hour window. Because the burden of proving a violation was

squarely on Hernandez, <u>Van Poyck</u>, 77 F.3d at 288, any defects in proof should be construed against her and her safe harbor claim denied on that basis.

> 2.    Even If The Six-Hour Safe Harbor Was Violated,
>        Suppression Is Still Not Warranted

Even assuming the six-hour safe harbor was violated and that the Government bears the burden of proof on this issue, that burden was met here.    First, the delay was reasonable.    Agent Vensk explained that he was one of two duty agents working to ports of entries on the day in question.  He did not recall when exactly he was first told of Hernandez' case.   When Agent Vensk and his partner arrived, they went out on the line and contacted the inspectors who made the seizure, to ask questions as well as inspect the vehicle himself.  He spoke with the inspectors, and examined the car and looked at the drugs that had been found.  Agent Vensk and his partner then went into the port security office, and he identified who the violator was that had been riding in the vehicle.

Before he could discuss the crime with Hernandez, Agent Vensk first had to take preliminary background data, which entails "a variety of information, date of birth, address of residence, relatives, health conditions and so on."  Even if this record does not contain an exact accounting of every minute, it is clear that before he took Hernandez' statements, Agent Vensk was gainfully occupied with a number of tasks relevant to his investigation.  One can reasonably infer that these tasks took up no small amount of time, especially since ports of entry are hectic places to work.  In addition, there was no evidence of prejudice to Hernandez.  The record contains no indication that she was groggy, fatigued, disoriented, or even cranky because of the delay.   She never complained about it, or demanded a quicker interview.  Although there was testimony by Agent Vensk that Hernandez cried at some point during the interview and expressed concerned for the well-being of her two children, the record establishes a reasonable explanation for the delay, and Hernandez' statements should be admitted.  <u>Van Poyck</u>, 77 F.3d at 289 ("if [the delay] is reasonable, the statement is admissible").

Also, public policy concerns weigh in favor of admission.  There is no evidence that Agent Vensk deliberately violated the six-hour rule.  This is not a case where an officer deliberately postponed an interview to interrogate a defendant at a disadvantage.  Accord <u>Van Poyck</u>, 77 F.3d at 290.  There is no evidence that Agent Vensk was wasting time or goofing off.  There is no evidence that he

1    prolonged the process to obtain a confession from Hernandez.  Because he did not act improperly, no

2    public policy would have been advanced by suppression.

3                                                    **IV**

4                                            **CONCLUSION**

5          Based on the foregoing, Defendant's motion to suppress should be denied.

6    DATED: May 30, 2008

7                                                    Respectfully Submitted,

8                                                    KAREN P. HEWITT
                                                     United States Attorney

9                                                    s/ Randy K. Jones

10                                                   _____

11                                                   RANDY K. JONES
                                                     Assistant United States Attorney

12                                                   Attorneys for Plaintiff
                                                     United States of America
                                                     Email: randy.jones2@usdoj.gov

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 085cr0371-IEG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| PRISCILLA HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Supplemental Response and Opposition to Defendant's Motion on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    **1.**    **Candis Lea Mitchell, candis_mitchell@fd.org**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 29, 2008

                                 s/ Randy K. Jones
                                 RANDY K. JONES