KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5684
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0371-IEG |
|---|---|---|
| Petitioner, | ) | |
| | ) | Date:  June 10, 2008 |
| | ) | Time:  9:00 a.m. |
| v. | ) | |
| | ) | THE UNITED STATES' |
| PRISCILLA HERNANDEZ, | ) | TRIAL MEMORANDUM |
| | ) | |
| Defendant. | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and and hereby files its trial memorandum.

**I**

**STATEMENT OF CASE**

**A. Indictment**

On February 13, 2008, a federal grand jury returned a two count indictment charging defendant Priscilla Hernandez ("Hernandez") with Importation of 28.26 kilograms (approximately 62.17 pounds) of Marijuana, in violation of Title 21, United States Code, Sections 952 and 960; and Possession of 28.26 kilograms (approximately 62.17 pounds) of Marijuana with intent to Distribute in violation of Title 21 United States Code, Section 841(a)(1).

**B.    Trial Status**

Trial is scheduled for June 10, 2008 at 9:00 a.m., before the Honorable Irma E. Gonzalez. The United States expects that its case-in-chief will last one day.

**C.    Status of Counsel**

Defendant is represented by appointed counsel, Candis Mitchell, Federal Defenders, Inc.

**D.    Custody Status**

Defendant is currently out of custody on a $20,000 personal surety bond signed by a financially responsible adult.

**E.    Interpreter**

The United States does not anticipate the need for an interpreter for its witnesses. The Defendant is a United States citizen.

**F.    Jury Waiver**

Defendant has not waived his right to a trial by jury.

**G.    Pretrial Motions**

On February 26, 2008 Hernandez filed her motions to compel discovery, preserve evidence, re-weigh narcotics evidence, and for leave to file further motions. On March 24, 2008, the Government filed its response and opposition to Hernandez' motions, along with its motion for reciprocal discovery. At the motions hearing held on March 24, 2008, the Court continued Hernandez' discovery motion, and granted her motion to re-weigh the drugs and preserve the evidence. The Court also granted the Government's motion for reciprocal discovery.

On May 15, 2008, Hernandez filed her motions in limine and motion to suppress statements. On May 22, 2008, the Government filed its response and opposition to Hernandez' motions in limine and suppression motion. The motions in limine hearing was held on May 29, 2008. In a written order, the Court denied Hernandez' motion to suppress statements on June 3, 2008.

**H.    Stipulations**

The United States and Defendant have not entered into any stipulations.

**I.    Discovery**

The United States has complied and will continue to comply with its discovery obligations. Defendant has not provided any reciprocal discovery.

**II**

**STATEMENT OF FACTS**

A.    Primary Inspection

On January 30, 2008, at approximately 3:45 p.m., the driver and sole occupant of a white 1998 Kia Sephia, with no license plates, entered into the United States from Mexico through vehicle primary lane #1 at the Calexico, California, West Port of Entry. The vehicle had a temporary State of California registration permit. Hernandez is listed as the registered owner of the vehicle.

At primary inspection, Hernandez approached Customs and Border Protection Officer (CBPO) M. Hunt and gave a negative oral customs declaration. Upon questioning by CBPO Hunt, Hernandez claimed:

> That she did not possess identification. That she was a United States citizen. That she was the registered owner of the vehicle. That she was in the process of purchasing the vehicle from a friend. That the vehicle was a "salvaged" vehicle. That the registration papers were in the glove compartment.

CBPO Hunt asked Hernandez to retrieve the registration papers from the glove compartment. Hernandez stated that she needed a screwdriver to pry the glove compartment open. CBPO Hunt went over to the passenger side of the vehicle and noticed glue in the airbag area of the dashboard. CBPO Hunt noticed that Hernandez' hands were trembling as she tugged and pulled on the glove compartment in an attempt to open it. CBPO Hunt asked Hernandez where she was going. Hernandez said she was going to Calexico to buy milk for her baby. CBPO noticed Hernandez making abrupt movements and requested her to open the trunk. During the inspection of the trunk, CBPO Hunt noticed Hernandez glancing at him through the side view mirror of the vehicle. CBPO Hunt referred Hernandez to the vehicle secondary lot.

B.    Secondary Inspection

At secondary, CBPO R. Mendibles asked Hernandez if she was bringing anything from Mexico and where she was going. Hernandez again gave a negative customs declaration and stated she was going to shop in Calexico. Hernandez stated the car belonged to her and that it had not been registered

3

yet. CBPO Mendibles asked Hernandez to open the trunk. After Hernandez opened the trunk, CBPO Mendibles saw a spare tire. CBPO Mendibles tried picking the tire up but it was too heavy.

CBPO Mendibles requested and received the assistance from Canine Enforcement Officer (CEO) Anzaldo who used his Narcotic Detector Dog (NDD) Zorro to search the vehicle. NDD Zorro alerted to the rear bumper area of the vehicle. CEO Anzaldo advised CBPO Mendibles of the alert.

CBPO Mendibles escorted Hernandez into the vehicle secondary office for a pat down search for weapons and merchandise which was negative.

C.     Drug Seizure and Arrest

CBPO Mendibles returned to the vehicle for further inspection. He found numerous packages concealed in the front and rear bumpers of the vehicle, and in both rear doors and the spare tire. CBPO Mendibles probed one of the packages and extracted a green leafy substance. Field-testing produced a positive indication for marijuana.

A total of 18 packages were discovered, with a combined weight of 28.26 kilograms (62.17 pounds). Some of the packages were wrapped in brown postal tape and others were wrapped in black tape. Hernandez was arrested for violation of Title 21 USC §§ 952 and 960, Importation of Controlled Substances.

The total wholesale price of the marijuana in Mexico is $12,434.00 and $24,868.00 in Calexico, California. The total retail price of the marijuana in Calexico, California is $79,577.60.

D.     Hernandez' Post-Arrest Statements

On January 31, 2008, at approximately 12:12 a.m., Immigration and Customs Enforcement (ICE) Special Agent Vensk advised Hernandez of her Miranda rights, in the English language, as witnessed by Special Agent Morquecho. The agents used a written Miranda rights advisal form. Hernandez acknowledged her rights by reading the form and placing her initials next to each right listed on the form. Afterwards, Hernandez agreed to answer questions without an attorney being present. In a videotaped interview, Hernandez made the following statements:

> That the vehicle belonged to her. That she purchased the vehicle for $1200 about one month ago in Mexicali from a man she knows as "Borrego". That she had put $500 down payment on the car. That "Borrego" has borrowed the car from her since she purchased it, most recently on January 25, 2008, returning it on January 27, 2008. That she went to Mexicali about 2-3 months ago and has been living there with her father. That she works in her father's business there. That she came to the United States that

day to go to the post office for a passport. That she did not have any identification and she thought her mother would be able to fax the documents she needed for her passport to the post office. She denied telling Officer Hunt she was going to Calexico to buy milk for her baby. That she has crossed the border into the United States approximately 3-4 times in that vehicle. That she denies knowing there was marijuana in the vehicle.

The interview was terminated at about 12:52 a.m.

### III
### APPLICABLE LAW

A.  21 U.S.C. §§ 952 and 960 (IMPORTATION OF MARIJUANA)

The United States must prove beyond a reasonable doubt that:

    a.  Defendant knowingly brought Marijuana into the United States; and
    b.  Defendant knew that it was Marijuana or some other prohibited drug.

9th Cir. Crim. Jury Instr. 9.13 (2007).

B.  21 U.S.C. §§ 841(a)(1) (POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE )

The United States must prove beyond a reasonable doubt that:

    a.  Defendant knowingly possessed Marijuana; and
    b.  Defendant possessed the Marijuana with the intent to deliver or transfer it to another person.

9th Cir. Crim. Jury Instr. 9.13 (2007).

    1.  "Possession" defined

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of the marijuana to another person, with or without any financial interest in the transaction. Id.

Possession may be actual or constructive, and it may be proved by direct or circumstantial evidence. See United States v. Chambers, 918 F.2d 1455, 1457 (9th Cir. 1990). A defendant's mere possession of a substantial quantity of a controlled substance may show that the defendant knowingly possessed the substance. See United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989) (2.5 kilograms of cocaine sufficient to show knowledge and intent to distribute; secret compartment within a vehicle used to conceal illegal substances can raise an inference of connection between a defendant and the substance).

### 2. "Knowledge" defined

Knowledge may be proved by reasonable inferences from the high wholesale value of the narcotics. See United States v. Golden, 532 F.2d 1244, 1247 (9th Cir.1976) ("value of the heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin and intent to distribute"); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (testimony as to the value of cocaine was relevant to issue of knowledge, since it tended to refute "the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States"). It does not matter whether the defendant knew that the substance was Marijuana. It is sufficient that the defendant knew it was some kind of prohibited drug.

### 3. "With intent to deliver" defined

The Government can prove the "intent to deliver" element based on the following: the large quantity, see Sanchez-Lopez, 879 F.2d at 555; the manner in which the controlled substances were packaged, see United States v. Glenn, 667 F.2d 1269, 1292 (9th Cir. 1982)); and the high value of the Marijuana. See Golden, 532 F.2d at 1247; United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (evidence of value of cocaine was relevant to proving the defendant's intent to distribute); United States v. Ramirez-Rodriguez, 552 F.2d 883.

## C. THE COURT SHOULD PROHIBIT DEFENDANT FROM MAKING REFERENCE TO DEFENDANT'S FAMILY, HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT

Evidence of, and thus argument referring to, Defendant's family, health, age, finances, education and potential punishment is inadmissible and improper.

Fed. R. of Evid. 402 provides that evidence "which is not relevant is not admissible." Fed. R. Evid. 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition). Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

Reference to Defendant's family, health, age, finances, education and potential punishment may be relevant at sentencing. However, in a drug smuggling trial, such reference is not only irrelevant and unfairly prejudicial but a blatant play for sympathy and jury nullification as well.

### D. DEFENDANT SHOULD BE PROHIBITED FROM INTRODUCING HIS OWN OUT-OF-COURT STATEMENTS

Defendant should be prohibited from introducing her own out-of-court hearsay statements. Defendant may not elicit her own oral statements through examination of other witnesses. Such statements are inadmissible hearsay, (United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (a defendant's "self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, . . . but the non-self-inculpatory statements are inadmissible hearsay.")), to which the rule of completeness does not apply (id.) and even if it did apply, would not render admissible. United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) ("Because [defendant's] out-of-court statements to [the government agent] do not fall within an exception to the hearsay rule, they are inadmissible, regardless of [the rule of completeness]."); United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir.1996) (rule of completeness does "not render admissible the evidence which otherwise is inadmissible under hearsay rules"). Enforcing this limitation on a defendant's ability to examine witnesses does not violate the Confrontation Clause. Ortega, 203 F.3d at 682.

### E. THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENT

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter is considered by the United States to be essential to the presentation. As such, the case agent's presence at trial is necessary to the United States. However, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615, and agrees that the government's own percipient witnesses, other than the case agent, will also remain outside the courtroom during other witnesses' testimony.

F.     THE COURT SHOULD LIMIT CHARACTER EVIDENCE

The United States anticipates that Defendant may improperly attempt to introduce testimony regarding Defendant's specific acts of prior good conduct. Testimony as to multiple instances of good conduct violates Federal Rule of Evidence 405(a). United States v. Barry, 841 F.2d 1400, 1403 (9th Cir. 1987); Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985).

Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same."

A character witness cannot offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant. United States v. Giese, 597 F.2d 1170 (9th Cir. 1979) cert. denied, 444 U.S. 972 (1979) (character witnesses must restrict their direct testimony to appraisals of defendant's reputation); United States v. Hedgecorth, 873 F.2d 1307 (9th Cir. 1989) ("While a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible").

In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness" and honesty is permissible. The appellate court, however, has held that asking a defense witness about the defendant's propensity to engage in a specific type of criminal activity is not allowed under Rule 404(a). See United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992) (impermissible to ask character witness about defendant's propensity to engage in large scale drug dealing).

Thus, the United States requests the Court to prohibit the Defendant from introducing testimony from any character witness about any specific instance of Defendant's conduct or Defendant's propensity to be involved in smuggling.

## IV
## **WITNESS LIST**

The Government may call the following witnesses in its case in chief, but reserves the right to call fewer or more witnesses, as necessary:

1. Customs and Border Protection Officer Michael Hunt
2. Customs and Border Protection Officer Richard Mendibles
3. Canine Enforcement Officer Carlos Anzalo
4. Immigration and Customs Enforcement Special Agent Russell Vensk
5. Immigration and Customs Enforcement Special Agent Morquecho
6. Immigration and Customs Enforcement Special Agent Robert Fejeran
7. Lori Anderson, Forensic Chemist, Drug Enforcement Administration

## V
## **PROPOSED JURY INSTRUCTIONS**

The Government will provide a copy of its jury instructions to the Court and defense counsel under separate cover.

## VI
## **STIPULATIONS**

No stipulations have been entered into by the parties at this time.

//
//
//
//
//
//
//
//
//
//

# VII
# **EXHIBIT LIST**

The Government may seek to introduce the following exhibits in its case in chief, but reserves the right to present additional exhibits, as necessary:

1. Photograph of Calexico, west POE
2. Photos of 1998 Kia Sephia
3. Copy of Temporary Registration Sticker
4. Copy of Secondary Referral Slip
5. Copy of Vehicle Registration Documents
6. Photo of marijuana in Spare Tire
7. Photos of Marijuana inside vehicle hidden compartments
8. Photos of bulk Marijuana
9. Representative samples of Marijuana
10. Hernandez mug shot
11. Drug value chart
12. Certified DMV Records of 1998 Kia Sephia

# IX
# **PROPOSED VOIR DIRE**

1. Of those of you who have sat on criminal juries, did any of those juries fail to reach a unanimous verdict?
2. Has anyone had an unpleasant experience with any law enforcement personnel?
3. Has anyone had any disputes with any agency of the United States Government?
4. Does anyone have relatives or close friends who have been investigated, arrested, accused or charged with a crime?
5. Does anyone have strong feelings about the United States Border Patrol or any other federal agency involved in illegal drug issues?

6. Does anyone believe that the illegal drug laws are too harsh? Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?

7. Does anyone believe the use of marijuana should be legalized?

8. Does everyone understand that you cannot let prejudice, pity or sympathy be a part of your decision as to whether the Defendant is guilty or not guilty?

9. Do any of you feel, just by looking at the Defendant, that you may have trouble deciding whether the Defendant is guilty or not guilty, regardless of the strength of the evidence against her? In other words, are any of you thinking right now that she doesn't look like a person who smuggle drugs across the border?

10. Does anyone have any strong religious or moral beliefs which you feel will make it difficult for you to serve as a juror in this case?

11. If you were trying this case instead of me, would you want someone with your frame of mind serving as a juror?

DATED: June 5, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/Randy K. Jones

RANDY K. JONES
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE IRMA E. GONZALEZ)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 085cr0371-IEG |
| Plaintiff, ) | |
| v. ) | |
| ) | CERTIFICATE OF SERVICE |
| PRISCILLA HERNANDEZ, ) | |
| Defendant. ) | |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **G**on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**1.     Candis Lea Mitchell, candis_mitchell@fd.org**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 5, 2008

s/ Randy K. Jones<br>RANDY K. JONES

12